IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

DONNIE D. SMITH                                                    PLAINTIFF

        v.                          Civil No.   5:21-cv-05155

LAWRENCE COUNTY, MISSOURI;
WASHINGTON COUNTY, ARKANSAS;
BOB SENNINGER, Presiding Commissioner
Of the Lawrence County Commission and Chief
Executive Officer of Lawrence County; DON
TROTTER, Prosecuting Attorney for Lawrence
County; PAMELA FOBAIR, Clerk of the Circuit
Court of Lawrence County; and JOSEPH WOOD,
County Judge of Washington County and Chief
Executive Officer of Washington County                             DEFENDANTS

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

This civil rights action was filed by Donnie D. Smith ("Smith") pursuant to 42 U.S.C. §§

1983, 1985 and 1988.   Smith proceeds *pro se*.   Smith contends his civil rights were violated when

a warrant was issued for his arrest by officials in Lawrence County, Missouri, and he was arrested

in Washington County, Arkansas, and incarcerated.   Pursuant to the provisions of 28 U.S.C. §§

636(b)(1) and (3), the Honorable P.K. Holmes, III, United States District Judge, referred this case

to the undersigned for the purpose of making this Report and Recommendation.

The case is before the Court on the Motion to Dismiss the Amended Complaint (ECF No.

23) filed by the Washington County Defendants, Washington County, Arkansas, and County Judge

Joseph Wood (collectively the "Washington County Defendants") and the Motion to Dismiss (ECF

No. 27) filed by the Lawrence County Defendants, Lawrence County, Missouri, Bob Senninger

("Senninger"), Don Trotter ("Trotter"), and Pamela Fobair ("Fobair")(collectively the" Lawrence

1

County Defendants").    Smith has responded (ECF Nos. 30-31) to the Motions.

## I.  BACKGROUND

Smith's Amended Complaint (ECF No. 21) and attachments are one-hundred-and-eighty-one pages in length.[1]    From the Amended Complaint, it is clear this controversy has its genesis in a document dated February 11, 2019.  (ECF No. 21 at 12). The document, containing thirteen "counts," was entitled *Notice and Demand* and was sent by Smith on behalf of Daniel Joseph Lickteig, a resident of Washington County, to multiple officers of Lawrence County and the Sheriff of St. Clair County.  *Id.* at 96 & 110.   Specifically, Smith sent the documents to County Commissioner Bob Senninger; Prosecuting Attorney Don Trotter; Governor Michael L. Parson; Circuit Court Clerk Pamela Fobair; Sheriff Scott Keeler of Osceola, Missouri;[2]  Sheriff Brad Delay of Mt. Vernon, Missouri;[3] and Circuit Judge Jack Goodman.[4]  *Id.* at 12 & 85-91.    The *Notice and Demand* purported to be issued in the "Lickteig family court of record."   *Id.* at 95-99.   Daniel J. Lickteig's son, Daniel Moses Lickteig, was incarcerated under the "supervision of the Sheriff of the St. Clair County, Missouri, Sheriff's Office."   *Id.* at 96 & 110.   Smith issued a certificate entitled "Notary's Certificate of Service" showing he had mailed the *Notice and Demand* to the Lawrence County officers.   *Id.* at 16 & 85-93.   Smith contends he acted as a notary "officiating a protest and dispute for a client within his community" in issuing the certificate of service.   *Id.* at 12.   Smith was a notary in the State of Arkansas.   *Id.*   Responses to the *Notice and Demand* were to be sent to Smith within seventy-two hours from receipt.   *Id.* at 95-96.

---

[1]  In ruling on a motion to dismiss, the Court "may consider documents attached to the complaint and matters of public and administrative record referenced in the complaint."   *Owen v. General Motors, Corp.,* 533 F.3d 913, 918 (8th Cir. 2008)(citation omitted).
[2]  Osceola is in St. Clair County, Missouri.
[3]  Mount Vernon is in Lawrence County, Missouri.
[4]  Circuit Judge for the 39th Circuit consisting of Barry, Lawrence, and Stone Counties.
https://www.courts.mo.gov/page.jsp?id=177474 (accessed December 13, 2021).

A probable cause affidavit was prepared by Matthew Kasper, an assistant prosecuting attorney for Lawrence County based on the February 11, 2019, mailing to Judge Goodman who was presiding over the case of Daniel M. Lickteig. (ECF No. 21 at 78). On May 16, 2019, a misdemeanor summons was issued for Smith in case 19LW-CR00352 in the Circuit Court of Lawrence County.[5] *Id.* at 74. Smith was charged with simulating legal process. *Id.* A hearing date was scheduled for July 11, 2019, at 9:00 a.m. *Id.* The summons was purportedly sent by mail to Smith at 188 W. Bowen Blvd., Goshen, AR 72735. *Id.* The offense date was listed as February 11, 2019. *Id.* at 75. Smith maintains the return envelope clearly shows that the summons was not delivered to him. *Id.* at 28. Additionally, he points out that the address to which the summons was sent to does not appear on the copy of the envelope filed and there is no way to verify it was actually sent to the correct address. *Id.* at 28-29.

On July 11, 2019, court records indicate Smith failed to appear for the hearing. (ECF No. 21 at 77). A failure to appear warrant was issued and bond set at $750. *Id.* Smith maintains the warrant was invalid as "[t]here is no wet ink signed warrant filed into the clerks signed by any judge in Missouri to substantiate a lawful arrest." *Id.* at 17. Smith argues that allowing a rubber stamp to take the place of a "wet ink signature" results in the judicial oversight of warrants being merely administrative resulting in a due process violation. *Id.*

On July 12, 2021,[6] following a routine traffic stop, Smith was arrested in Fayetteville, Arkansas, on the Lawrence County, Missouri, warrant. (ECF No. 21 at 14). As a result of the warrant, Smith says he remained incarcerated in Washington County for ninety-five[7] days. *Id.*

---

[5] The case is currently ongoing with the next hearing scheduled for January 20, 2022. https://www.courts.mo.gov/casenet/cases/searchDockets.do (accessed December 14, 2021).
[6] Smith also refers to the date of the arrest being July 13, 2021. (ECF No. 21 at 35).
[7] Smith at times refers to the length of his incarceration as being ninety-six days.

3

Smith alleges that all attempts to determine if a lawful warrant existed were "uneventful and without response." *Id.*

Smith says he did not waive extradition. (ECF No. 21 at 15). Smith alleges Lawrence County failed to utilize the proper process to obtain his extradition. *Id.* Further, he alleges Washington County denied him a habeas corpus hearing and a fugitive bond hearing in violation of the Uniform Criminal Extradition Act. *Id.*

On August 19, 2019, Smith issued a "Certified Notice of Judgment" (ECF No. 21 at 109-127). Smith filed this document on August 21, 2019, with the Washington County Circuit Clerk. *Id.* at 109. The document said the recipients of the Notice and Demand had "agreed by their silence, acquiescence and non-response to all the claims made within the Notice and Demand. *Id.* at 112. Among other things, the recipients were alleged to have agreed they had no jurisdiction over Daniel M. Lickteig; they were conspiring to defraud Daniel J. Lickteig of his son; his son was being denied medical care; and the recipients had agreed they should answer for their crimes of false arrest, false imprisonment, and unlawful seizure *Id.* at 122-124.

On November 13, 2019, the Lawrence County Prosecuting Attorney's Office received the documents sent by Smith to various public officials purporting to be official documents in the two criminal cases against Daniel M. Lickteig. (ECF No. 21 at 79). Based on the documents, a statement of probable cause was prepared indicating it was believed that probable cause existed to charge both Daniel J. Lickteig and Smith with a felony charge of forgery. *Id.* A criminal complaint, case number 19LW-CR01005,[8] was filed against Smith in the Lawrence County Circuit Court. *Id.* at 83.

---

[8] The case is currently ongoing with the next hearing scheduled for January 20, 2022.
https://www.courts.mo.gov/casenet/cases/searchDockets.do (accessed December 14, 2021).

4

On November 16, 2020, Smith filed a "notice and demand" with the Lawrence County Circuit Court Clerk stating that all correspondence sent to him in the two criminal cases should be sent to:

> my address *exactly* as it appears below.   All rights are reserved to return unopened any and all correspondence with a Zip Code absent clear and compelling authority for its use, as being improperly addressed to an artificial corporate entity "residing" in a *federal regional martial law* and/or commercial jurisdiction and venue (see e.g., 26 USC 7408(d)), as opposed to a freeman *domiciled* in a *State judicial district* in a State admitted into "*this Union."*

(ECF No. 21 at 84)(emphasis in original).   The address the Clerk "**shall** use to communicate with" Smith was listed as:   "Donnie D. Smith, c/o 188 West Bowen Blvd., #234, Goshen, Arkansas." *Id.* (emphasis added).   On the document someone had handwritten the zip code "72735-8800." *Id.*

On November 30, 2020, Smith filed a "Demand for Bill of Particulars Nature and Cause of Accusation" in the Lawrence County Circuit Court regarding both criminal cases.   (ECF No. 21 at 61-70).   The document contains forty-four "questions."   *Id.* at 62.   Along with some questions about the nature of the offense against him, there are spurious questions such as:   (1) Whether the word person means a corporation and if so where are the articles of incorporation for the petitioner?; (2) Since no provision of the Missouri Constitution is in effect, what is the authority for prosecuting him?; (3) What is the CUSIP[9] number assigned to the case?; (4) What form of payment is accepted?; (5) Does the Court have a commercial and government entity bank account?; (6) Is the court or prosecutor registered with the Department of Defense?; (7) Is the Court owned by the United States Attorney's Executive Office in Washington, D.C.?, etc.   *Id.* at 62-67.

---

[9] "CUSIP stands for Committee on Uniform Securities Identification Procedures.   A CUSIP number identifies most financial instruments."   https://www.investor.gov/introduction-investing/investing-basics/glossary/cusip-number (accessed December 13, 2021).

Additionally, Smith states that Missouri is not a state appointed to the Union and all officials must be appointed by the President; Smith asks for certified copies of the appointments of all official actors in this case. *Id.* at 67.

By affidavit, Smith maintains he never received "any summons" at his mailing address 188 Bowen Blvd., Goshen, Arkansas. (ECF No. 21 at 180). Smith asserts he sent a communication to Judge Goodman "requiring validation of a lawful warrant for my arrest and received no reply." *Id.* He maintains this failure denied his "due process . . . to know the nature and cause by" Lawrence County. *Id.* Smith says he "followed the Arkansas Notary Handbook in the fulfilment of his duties as a Notary in Arkansas which is presumed to be the cause of the allegations emanating from" Lawrence County. *Id.* at 181.

As relief, Smith seeks monetary damages in the amount of $25 million from both the Lawrence County Defendants and the Washington County Defendants, reasonable costs of expert fees and prejudgment interest. (ECF No. 21 at 58-59). Additionally, he seeks any other relief the Court may deem just and proper. *Id.* at 59.

## II.   DISCUSSION

### A.   Motion of the Washington County Defendants

The Washington County Defendants maintain they are entitled to dismissal of the Amended Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure on the following grounds: (1) Smith has identified no basis for personal liability on the part of County Judge Joseph Wood; (2) Smith fails to state a basis for official capacity liability; (3) Smith does not identify who undertook the allegedly wrongful conduct but merely alleges that the "Sheriff and his employees knew or should have known what constitutes a lawful warrant . . . of another State;"

6

(4) if true, negligence fails to state a claim under 42 U.S.C. §§ 1983, 1985, and 1988; and (5) there is no evidence Smith, or anyone on his behalf, petitioned a court for a writ of habeas prior to the filing of this case.[10]

### (1).  Rule 12(b)(6) Standard

Rule 8(a) contains the general pleading rules and requires a complaint to present "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  "In order to meet this standard, and survive a motion to dismiss under Rule 12(b)(6), 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'"  *Braden v. Wal–Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (cleaned up)(quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft*, 556 U.S. at 678. While the Court will liberally construe a *pro se* plaintiff's complaint, the plaintiff must allege sufficient facts to support his claims.  *See Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004).

### (2).  Individual Liability of County Judge Wood under § 1983

Smith makes only the most general and conclusory allegations about County Judge Wood's involvement in this case.  Smith relies on the fact that County Judge Wood functions as the chief executive officer for the county government.  (ECF No. 21 at 7).  Smith alleges County Judge Wood is "responsible" for the actions of Washington County's agents "and the injuries and damages claims that resulted from these violations spelled out within this action."  *Id.* at 8 & 21.

---

[10] Smith submitted a habeas corpus petition under 28 U.S.C. § 2241 in this case.  The petition was severed and opened as *Smith v. Lawrence County, et al.,* Civil No. 21-5172.  The Court has abstained under *Younger v. Harris,* 401 U.S. 27 (1971) and the motion for habeas corpus has been denied.  (ECF No. 7).

7

Smith claims County Judge Woods "had or should have had knowledge" of Smith's rights and of the customary practices of the Washington County Sheriff and his deputies[11] in the acceptance of a:

> fatally flawed warrant, absent a wet ink signature of any judicial officer thereon, absent any sworn affidavit in support, being sworn before a person qualified to administer oaths . . . in an improper venue, (being an action from one State (Missouri) agent against another State (Arkansas) agent in clearly a diversity case).

*Id.* at 39-40.

A claim of deprivation of a constitutional right cannot be based on a *respondeat superior* theory of liability. *See Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). "[A] supervisor is not vicariously liable under 42 U.S.C. § 1983 for an employee's unconstitutional activity." *White v. Holmes*, 21 F.3d 277, 280 (8th Cir. 1994). Supervisors can "incur liability ... for their personal involvement in a constitutional violation, or when their corrective inaction amounts to deliberate indifference or tacit authorization of the violative practices." *Langford v. Norris*, 614 F.3d 445, 460 (8th Cir. 2010). Here, there is no allegation that County Judge Wood had any personal knowledge or involvement in Smith's arrest on the Lawrence County warrant or in any pending extradition.

To establish individual liability for a failure to train or supervise, Smith must show County Judge Wood: "(1) had notice of a pattern of unconstitutional acts committed by subordinates; (2) was deliberately indifferent to or tacitly authorized those acts; and (3) failed to take sufficient remedial action; (4) proximately causing injury to [Smith]." *Perkins v. Hastings,* 915 F.3d 512, 524 (8th Cir. 2019)(cleaned up). There are no such allegations in this case. Therefore, no plausible individual capacity claim is stated against County Judge Wood.

---

[11] Neither the Washington County Sheriff nor any of his deputies are named Defendants in this case.

### (3). Official Capacity Claim Against Washington County Under § 1983

A governmental entity may not be held liable for an injury inflicted solely by its employees or agents on a *respondeat superior* theory of liability. *Monell,* 436 U.S. at 694. "Section 1983 liability for a constitutional violation may attach to a municipality if the violation resulted from (1) an 'official municipal policy,' (2) an unofficial 'custom,' or (3) a deliberately indifferent failure to train or supervise." *Corwin v. City of Indep., Mo.,* 829 F.3d 695, 699 (8th Cir. 2016)(cleaned up).

Here, Smith alleges that the Washington County Sheriff's Department "relied upon a fraudulent and defective warrant absent due course of law, culminating in [Smith's] 95 days state incarceration in Washington County." (ECF No. 21 at 40). Smith maintains that Washington County's reliance on the defective warrant denied him his right to a habeas corpus hearing and a fugitive bond which he was entitled to under the Uniform Criminal Extradition Act. *Id.* Smith maintains Washington County had a duty to provide him a habeas corpus hearing and a fugitive warrant. *Id.*

Washington County may be subject to liability on the basis of a policy so long as "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell,* 436 U.S. at 690. The allegations of the Amended Complaint fail to suggest Smith's arrest was made pursuant to any such policy.

To hold Washington County liable on the basis of an unofficial custom, Smith must demonstrate "(1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; (2) deliberate indifference to or tacit

9

authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and (3) that plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation." *Corwin*, 829 F.3d at 700 (cleaned up). The unofficial custom must be so pervasive among non-policymaking employees that it effectively has the force of law. *Ware v. Jackson Cnty., Mo.,* 150 F.3d 873, 880 (8th Cir. 1998). Smith's allegations fall wholly short of establishing a plausible claim of liability based on a continuing, widespread, persistent pattern of unconstitutional misconduct. In fact, the only instance mentioned is the alleged unconstitutional conduct related to Smith's case.

Smith maintains Washington County failed to train its officers to differentiate between valid warrants and defective warrants. He maintains this failure to train resulted in the violation of his constitutional rights.

To hold Washington County liable on a failure to train theory, Smith must establish that: "(1) the [County's] . . . training practices [were] inadequate; (2) the [County] was deliberately indifferent to the rights of others in adopting them, such that the failure to train reflects a deliberate or conscious chose by [the County]; and (3) an alleged deficiency in the . . . training procedures actually caused [Smith's] injuries." *Parrish v. Ball,* 594 F.3d 993, 997 (8th Cir. 2010)(cleaned up); s*ee also City of Canton, Ohio, v. Harris,* 489 U.S. 378, 389 (1989)("Only where a municipality's failure to train its employees in a relevant respect evidence a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city "policy or custom" that is actionable under § 1983'). Merely alleging that the employees of the sheriff's office should have been able to recognize the alleged invalidity of the warrant in question

does not amount to a failure to train.   Although Smith believes the warrant was invalid because it did not have a "wet ink signature" of a judge, there are no factual allegations suggesting that Washington County's alleged failure to train reflected a deliberate or conscious choice by the County or that the alleged failure to train caused Smith's injuries.   No plausible claim has been stated against Washington County.

### (4).   Claims Under § 1985[12]

The allegations of the Amended Complaint also assert that the actions of the Washington County Defendants violated 42 U.S.C. §§ 1985(2) & (3) by depriving him "the equal protection of the laws in relation to extradition laws."   (ECF No. 21 at 46).   "In general terms, section 1985 proscribes five different types of conspiracies."   *Harrison v. Springdale Water & Sewer Com'n.,* 780 F.2d 1422, 1429 (8th Cir. 1986).   In this case, Smith asserts the Washington County Defendants obstructed the due course of justice with intent to deprive him of the equal protection of the laws in violation of the second clause of § 1985(2).   He also asserts the Washington County Defendants conspired to deny him the "equal protection of the laws" and the "equal privileges and immunities under the laws" in violation of the first clause of § 1985(3).   The remaining three categories of conspiracies "relate to federal institutions and processes" and are inapplicable here. *Id.*

The pertinent part the second clause of § 1985(2) proscribes conspiracies:

for the purposes of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State . . . with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of laws.

---

[12] The Washington County Defendants only address the § 1985 claims in a single sentence asserting that negligence fails to state a claim under § 1985.   (ECF No. 23 at 1).

11

*Id.*

The equal protection language of this clause compels the conclusion that "[a]n allegation of class-based, invidiously discriminatory animus is required to state a claim." *Harrison,* 780 F.2d at 1429. Thus, Smith must establish: (1) an agreement between the conspirators to obstruct state judicial proceedings which was (2) motivated by racial animus or some type of class-based discrimination. *Id.* Smith has made no allegations that the conduct of the Washington County Defendants motivated by racial animus or class-based discrimination. No plausible claim has been asserted under § 1985(2).

The pertinent part of the first clause of § 1985(3) proscribes conspiracies "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." *Id.* To state a claim under § 1985(3), Smith must establish that (1) he is a member of a class suffering from invidious discrimination; and (2) Defendants' actions were motivated by racial animus or some other type of class-based discrimination. *United Bhd. of Carpenters, Local 610 v. Scott,* 463 U.S. 825, 834-39 (1983). Nothing in the allegations of the Amended Complaint suggest Smith was a member of a class suffering from invidious discrimination or support the existence of any racial animus on the Washington County Defendants' part. No plausible claim is stated under § 1985(3).

**(5). Claims Under § 1988**[13]

Section 1988 creates no separate cause of action. *Moor v. Alameda County,* 411 U.S. 693 (1973). Instead, it merely complements the statutes that create causes of action for violation of

_____

[13] The Washington County Defendants only address the § 1988 claims in a single sentence asserting that negligence fails to state a claim under § 1988. (ECF No. 23 at 1).

federal civil rights. *Id.* The statute provides for the use of state law and common law to supplement the remedial powers of the courts, the availability of attorney's fees, and the availability of expert fees. 42 U.S.C. § 1988.

**(6). Claims Under the Extradition Acts**[14]

Smith alleges Defendants violated the Federal Extradition Act, 18 U.S.C. § 3182, and the Arkansas Uniform Criminal Extradition Act, Ark. Code Ann. § 16-94-210, when he was denied a habeas corpus hearing and a fugitive bond hearing. *See e.g.,* (ECF No. 21 at 15, 35, 37, 41).

Article IV, § 2 of the United States Constitution and 18 U.S.C. § 3182 govern interstate extradition. Article IV, § 2 provides:

> A person charged in any State with Treason, Felony, or other Crime, who shall flee from Justice, and be found in another State, shall on Demand of the executive Authority of the State from which he fled, be delivered up, to be removed to the State having Jurisdiction of the Crime.

*Id.*

Section 3182 provides:

> Whenever the executive authority of any State or Territory demands any person as a fugitive from justice, of the executive authority of any State, District, or Territory to which such person has fled, and produces a copy of an indictment found or an affidavit made before a magistrate of any State or Territory, charging the person demanded with having committed treason, felony, or other crime, certified as authentic by the governor or chief magistrate of the State or Territory from whence the person so charged has fled, the executive authority of the State, District, or Territory to which such person has fled shall cause him to be arrested and secured, and notify the executive authority making such demand, or the agent of such authority appointed to receive the fugitive, and shall cause the fugitive to be delivered to such agent when he shall appear. If no such agent appears within thirty days from the time of arrest, the prisoner may be discharged.

18 U.S.C. § 3182.

---

[14] The Washington County Defendants fail to separately address these claims.

13

Section 16-94-210 provides that:

> No person arrested upon such warrant shall be delivered over to the agent whom the executive authority demanding the personal shall have appointed to receive the person unless he or she has been informed of the demand made for his or her surrender and of the crime with which he or she is charged and that he or she has the right to demand legal counsel; and if the prisoner, his or her friends, or counsel shall state that he or she or they desire to test the legality of the arrest, the prisoner shall be taken forthwith before a judge of a court of record in this state, who shall fix a reasonable time to be allowed the prisoner within which to apply for a writ of habeas corpus. And when such writ is applied for, notice thereof, and of the time and place of hearing thereon, shall be given to the public prosecuting officer of the county in which the arrest is made and in which the accused is in custody, and to the said agent of the demanding state.

Ark. Code Ann. § 16-94-210. *See also* Ark. Code Ann. § 16-94-206 (extradition of persons not present in demand state at time of commission of crime).

The writ of habeas corpus was available to Smith "before being extradited, . . . in the asylum state, to require that a neutral judicial officer of the demanding state has made a determination of reasonable ground or probable cause that [Smith] has committed an offense." *Brown v. Nutsch,* 619 F..2d 758, 763 (8th Cir. 1980). "Prior to his removal to the demanding state, the charged party can only challenge his confinement by the asylum state authorities through the writ of habeas corpus." *Id.* Smith has not alleged in the Amended Complaint that he filed a motion for writ of habeas corpus prior to filing this case.[15] Exhaustion of state remedies is required. *Id.* A §1983 action is not available to challenge the fact or duration of confinement. *Preiser v. Rodrigues,* 411 U.S. 475, 489-90 (1973).

Nothing submitted in the many pages of attachments indicates Smith filed such a motion. Moreover, the Supreme Court has long held that even if a person is forcibly abducted into the

---

[15] Smith did file a writ for habeas corpus in this case. The petition for a writ of habeas corpus was severed and opened as *Smith v. Lawrence County, Missouri, et al.,* Civil No. 5:21-cv-05172. The petition has since been dismissed based on the doctrine of abstention set forth in *Younger v. Harris* 401 U.S. 37 (1971).,

court's jurisdiction, it does not impair the power of the court to try the person. *Ker v. Illinois,* 119 U.S. 436, 444 (1886); *see also Frisbie v. Collins,* 342 U.S. 519, 522 (1952)(prisoner may not attack the validity of his conviction in the demanding state on the basis of improper extradition). No plausible claim is stated against the Washington County Defendants related to extradition.

### B. Motion of the Lawrence County Defendants

The Lawrence County Defendants maintain they are entitled to dismissal of the Amended Complaint under Rules 12(b)(2), 12(b)(5), and 12(b)(6) of the Federal Rules of Civil Procedure on the following grounds: (1) there are no allegations that Lawrence County or Defendant Senninger had any meaningful contacts with the State of Arkansas sufficient to warrant the exercise of personal jurisdiction over them; [16] (2) Defendant has not been served under Rule 4 of the Federal Rules of Civil Procedure; (3) the Amended Complaint fails to state a claim upon which relief can be granted; and (4) the Lawrence County Defendants are entitled to dismissal on the grounds of absolute immunity, as the only substantive allegations involve legal process undertaken by Lawrence County prosecutors and judges in the filing and processing of a criminal charge against Smith.

### (1). Rule 12(b)(2) Standard

"To defeat a motion to dismiss for lack of personal jurisdiction, the nonmoving party need only make a prima facie showing of jurisdiction." *Epps v. Stewart Info. Servs. Corp.*, 327 F.3d 642, 647 (8th Cir. 2003). Smith must "state sufficient facts in the complaint to support a reasonable inference" that the Lawrence County Defendants may be subject to suit in Arkansas. *Steinbuch v. Cutler*, 518 F.3d 580, 585 (8th Cir. 2005). "A party seeking to establish the court's

---

[16] There is no mention of Don Trotter, the Prosecuting Attorney, or Pamela Fobair, the Circuit Court Clerk, both of whom were added as Defendants in the Amended Complaint.

in personam jurisdiction carries the burden of proof, and the burden does not shift to the party

challenging jurisdiction." *Epps*, 327 F.3d at 647.

### (2). The Existence of Personal Jurisdiction

When the jurisdiction of the Court is based on a federal statute or federal question[17] a

prima facie case for personal jurisdiction requires two elements. *Omni Capital Int'l, Ltd. v. Rudolf*

*Wolff & Co.,* 484 U.S. 97, 104 (1987). First, jurisdiction may be exercised only when haling the

Defendant into court satisfies the Due Process Clause. *Id.* Second, Defendant must be amenable

to service of process. *Id.*

Section 1983 does not provide for nationwide service of process. *See e.g., Dudnikov v.*

*Chalk & Vermillion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008). The Court therefore

looks to the "long-arm statute of the forum state.'" *Romak USA, Inc.*, *v. Rich*, 384 F.3d 979, 984

(8th Cir. 2004) (quoting *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072 (8th Cir. 2004)).

"Arkansas' long-arm statute extends jurisdiction over nonresidents to the maximum extent

permitted by the Due Process Clause." *Epps.*, 327 F.3d at 647; Ark. Code Ann. § 16-4-101.

Thus, the single question is whether the exercise of personal jurisdiction is consistent with the Due

Process Clause. *See Steinbuch,* 518 F.3d at 585.

"Due process requires sufficient 'minimum contacts' between the defendant and the forum

state so that 'maintenance of the suit does not offend traditional notions of fair play and substantial

justice.'" *Epps*, 327 F.3d at 647 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S.

---

[17] Smith maintains that diversity of citizenship exists. However, it has long been the law that there must be complete diversity of citizenship. *See e.g., OnePoint Solutions, LLC v. Borchert,* 486 F.3d 342, 346 (8th Cir. 2007)("Complete diversity of citizenship exists where no defendant holds citizenship in the same state where any plaintiff holds citizenship"). Smith is a citizen of Arkansas as are the Washington County Defendants. Complete diversity of citizenship is therefore lacking.

286, 291-92 (1980)).  "[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws."  *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).  "Defendant's contacts must be more than 'random, fortuitous, or attenuated.'"  *Epps*, 327 F.3d at 648 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).  "[T]he defendant's conduct and connection with the forum State [must be] such that he should reasonably anticipate being haled into court there."  *World-Wide Volkswagen,* 444 U.S. at 297.

"Minimum contacts must exist either at the time the cause of action arose, the time the suit is filed, or within a reasonable time immediately prior to the filing of the lawsuit."  *Pecoraro v. Sky Ranch for Boys, Inc.*, 340 F.3d 558, 562 (8th Cir. 2003) (cleaned up).  The Eighth Circuit has set forth five criteria to be considered in determining whether a defendant has minimum contacts with the forum state.  *Burlington Industries, Inc. v. Maples Industries, Inc.*, 97 F.3d 1100, 1102 (8th Cir. 1996) (citing *Land-O-Nod Co. v. Bassett Furniture Indus., Inc.*, 708 F.2d 1338, 1340 (8th Cir. 1983)).  These factors are:  (1) the nature and quality of contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties.  *Id.*  The first three of these factors are of "primary importance" in determining "the sufficiency of defendant's contacts."  *Id.*

Here, the Lawrence County Defendants argue that

a municipality located and operating exclusively within the State of Missouri cannot under any circumstances reasonably anticipate being haled into court in Arkansas.  Moreover, a County Commissioner of the out-of-state municipality, who has no direct or specific contacts with the State of Arkansas (an particularly with respect to the allegations in plaintiff's Amended Complaint) cannot reasonably anticipate being haled into court in Arkansas for matters which occurred

17

exclusively in Missouri.

(ECF No. 28 at 5). The Lawrence County Defendants maintain that application of the five specific criteria leads to the conclusion that personal jurisdiction is lacking. No reference is made to any cases involving the issuance of warrants on out-of-state defendants.

As outlined in detail above, warrants for Smith's arrest were issued in Lawrence County. Smith was an out-of-state defendant who was never physically present in the State of Missouri when the alleged crimes were committed. Senninger is not alleged to have personally performed any function in connection with Smith being charged criminally, the warrants being issued or filed, or in any discussions regarding Smith's arrest and possible extradition. Trotter is the prosecuting attorney for Lawrence County, Missouri. The only involvement alleged is that his office initiated two criminal actions against Smith, an Arkansas citizen, allegedly involving a defective warrant which resulted in Smith's incarceration in Arkansas. Other than the fact that Smith was known to be a citizen of Arkansas, Trotter is not alleged to have personally had any other contacts with the State of Arkansas. Fobair is the elected Clerk of the Circuit Court for Lawrence County. Fobair is not alleged to have had any contacts with the State of Arkansas. She, or someone employed by her, is merely alleged to have stamped a judge's signature on the arrest warrant and filed documents in Smith's two criminal cases.

The only Lawrence County Defendant who can be said to have purposefully directed activities at a forum resident is Trotter as his office executed statements of probable cause seeking an arrest warrant for Smith and filed criminal complaints in the Circuit Court of Lawrence County charging Smith with violations of Missouri law. However, all duties carried out by Trotter's office were performed within the State of Missouri. The Lawrence County Defendants argue that

18

the fact that "an outstanding Missouri warrant resulted in plaintiff's incarceration in Arkansas" is insufficient to establish the necessary minimum contacts required for the exercise of personal jurisdiction.[18]  (ECF No. 28 at 6-7).

In contrast, Smith argues that Trotter "reached across state lines to effect a bodily attachment upon an Arkansan who committed no crime in Missouri, is not a fugitive from justice from any process in Missouri, and is not a parole or probation violator from any court process in Missouri."  (ECF No. 30 at 3).  Further, Smith maintains Trotter acted without the Governor's knowledge or authorization.  *Id.*  The Court assumes this latter reference is to the process necessary to obtain extradition; however, Smith has not alleged that Trotter sought his extradition to Missouri.

The Lawrence County arrest warrant was apparently lodged in some nationwide database (presumably the National Crime Information Center (NCIC)).   After the warrant was issued, there are no allegations that any of the Lawrence County Defendants initiated contact with Arkansas officials to seek their cooperation in Smith's arrest or in his extradition.   Instead, Smith was arrested following a routine traffic stop in which a check was made for outstanding warrants.   The traffic stop could have occurred in any State.   Courts have rejected the notion that the mere lodging of an arrest warrant in a nationwide database is sufficient to establish purposeful availment of the laws of the state in which the arrest occurs.  *See e.g., Lee v. City of Los Angeles,* 250 F.3d 668, 693 (9th Cir. 2001)(New York officials did not direct their efforts toward California by merely issuing warrants and lodging their warrants in nationwide databases), *overruled on other grounds as recognized by Galbraith v. County of Santa Clara,* 307 F.3d 1119, 1125-26 (9th Cir. 2002);

---

[18] Defendants do not cite the Court to any case law involving the same or similar facts.

*Doe v. Delaware State Police,* 939 F. Supp. 2d 313, 333-25 (S.D.N.Y. 2013)(arrest following traffic stop where there are no allegations of proactive conduct—no request for arrest or extradition—insufficient to justify the exercise of jurisdiction)(collecting cases). Minimum contacts may be found to exist when proactive steps are taken to secure an arrest in the forum state and extradition to the jurisdiction issuing the warrant. *Id.* In this case, there are simply no factual allegations suggesting any of the Lawrence County Defendants proactively worked with Arkansas officials in connection with Smith's arrest, incarceration, or extradition. In fact, it appears that Smith waived extradition. (ECF No. 31 at 4—waived extradition after ninety-six days in custody).

The sole factor potentially distinguishing this case is that the criminal complaints alleging violations of Missouri law were filed against an Arkansas citizen and his arrest fortuitously occurred in Arkansas. Does the act of charging a citizen of the forum state with violations of the law of another state constitute the purposeful establishment of minimum contacts in the forum state? The Court does not believe it does. While it was perhaps foreseeable that the filing of these criminal complaints would cause injury within the State of Arkansas, the Supreme Court has stated that this "kind of foreseeability is not a 'sufficient benchmark' for exercising personal jurisdiction." *Burger King,* 471 U.S. at 474 (cleaned up). Instead, the "foreseeability that is critical to due process analysis . . . is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen,* 444 U.S. at 297. The investigation and resulting filing of the criminal complaints alleging violations of Missouri law would have occurred regardless of Smith's state of residence. These actions do not constitute sufficient minimum contacts or purposeful availment to comport

20

with the exercise of Due Process. As minimum contacts are lacking, the Court does not have personal jurisdiction over the Lawrence County Defendants. While dismissal is an option, the Court believes the interests of justice would best be served by transferring the claims against the Lawrence County Defendants to the Western District of Missouri, Southern Division, pursuant to the provisions of 28 U.S.C. §1406(a).

## IV.   CONCLUSION

For these reasons, it is recommended that:

(1).   The Motion to Dismiss (ECF No. 23) filed by the Washington County Defendants be **GRANTED,** dismissing all claims against Washington County and County Judge Joseph Wood;

(2).   The Motion to Dismiss (ECF No. 27) filed by the Lawrence County Defendants be **GRANTED IN PART and DENIED IN PART.** Specifically, while the Court finds that it lacks personal jurisdiction over these Defendants, the Court believes interests of justice will best be served by transferring the case to the Western District of Missouri, Southern Division.

**The parties have fourteen (14) days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 3rd day of January 2022.

*/s/ Christy Comstock*

CHRISTY COMSTOCK
UNITED STATES MAGISTRATE JUDGE

21